**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 12, 2024

# In the Court of Appeals of Georgia

A24A0550. GYLLSTROM et al. v. THE BLUE STONE CONDOMINIUM ASSOCIATION, INC. et al.

RICKMAN, Judge.

Hans and Linda Gyllstrom appeal the trial court's order dismissing their complaint against The Blue Stone Condominium Association, Inc. ("Blue Stone") and members of Blue Stone's Board of Directors (the "Board"). They contend that the trial court erred by dismissing their complaint for failure to follow a dispute resolution provision contained within the governing condominium instruments. For the reasons that follow, we reverse the trial court's order and remand the case.

We review de novo a trial court's ruling on a motion to dismiss. See *DeKalb County v. City of Chamblee*, 369 Ga. App. 503, 503 (894 SE2d 59) (2023). "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who

filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." (Citation and punctuation omitted.) Id. at 503-504. "[T]he pleadings to be construed include any exhibits attached to and incorporated into the complaint and the answer." *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 750 (751 SE2d 545) (2013).

So viewed, the complaint alleges the following. The Gyllstroms own a condominium at the Blue Stone Condominiums and have resided there for approximately 22 years. On May 4, 2022, a member of the Board informed the Gyllstroms that someone had discovered certain information about a Gyllstrom family member through an internet search and that the Board's attorney had informed the Board that this information needed to be published to the other residents of the condominiums. A draft letter to the other residents identified the Gyllstroms, stated that their son was on the "sex offender list," and stated that their son would not be allowed to have his own keys to their unit or to walk around the premises unescorted. Hans Gyllstrom requested that publication of the letter be withheld or delayed and exchanged text messages with the Board member seeking information about the agreements or regulations that formed the basis for the proposed letter.

On May 13, 2022, the Board sent an email to the residents of the Blue Stone condominiums, which included the following:

> Recently, we became aware of a particularly delicate situation. And, after confirming this information with official sources, we consulted our attorney, were compelled to make certain general information about that situation known to the rest of the community. Therefore, we are hereby informing you that we have a semi-regular visitor to Blue Stone who is actively listed on the Georgia Sex Offender Registry. To be clear, this person is a *visitor*, **NOT** a resident. Let us repeat that: **NOT** a resident.

> We have made it clear to the relevant parties that this person is not to be on the property unescorted and ensured that this person does not have any means (keys, FOB) of entering the premises without proper escort.

On May 16, 2022, Hans Gyllstrom responded to the Board via email. He expressed displeasure with the Board's May 13 email, which he deemed "a deliberate attack on our family and our property rights," denied they had surrendered their right to determine who has access to their home, and requested the Board's authority for making such a demand, the minutes of any meetings held by the Board on this issue, and documents regarding any investigation conducted by the Board. When no response was received, Hans Gyllstrom sent a second email to the Board on June 2, 2022, in which he reiterated his request for the Board's authority to control the use

of the Gyllstrom's property and restrict the entry of their family members and guests. On June 3, 2022, the Board responded, "We regret that this situation has affected your relationship with the Board, but the Board's actions were both lawful and appropriate, and we consider the community notice matter closed." In response, the Gyllstroms again asked why the Board refused to provide its legal authority for its actions and declared, "[r]est assured that this matter is not closed."[1]

Approximately one month later, the Gyllstroms filed suit against Blue Stone and the Board. Blue Stone and the Board answered the complaint, and Blue Stone filed a motion to dismiss in which it argued, inter alia, that the Gyllstroms had failed to comply with the dispute resolution provision in the Declaration of Condominium for The Blue Stone, A Condominium (the "Declaration").[2] The dispute resolution provision provided:

> Prior to filing a lawsuit against the Association, the Board, or any officer, director, or property manager of the Association, a Unit Owner or Occupant must request and attend a hearing with the Board of Directors. Any such request shall be in writing and shall be personally delivered to

---

[1] All of these communications were attached to the Gyllstroms' complaint as exhibits.

[2] A copy of the Declaration was attached to Blue Stone's motion to dismiss.

4

any member of the Board of Directors or the property manager, if any, of the Association. The Owner or Occupant shall, in such request and at the hearing, make a good faith effort to explain the grievance to the Board and resolve the dispute in an amicable fashion, and shall give the Board a reasonable opportunity to address the Owner's or Occupant's grievance before filing suit. Upon receiving a request for a hearing, the Board shall give notice of the date, time and place of the hearing to the person requesting a hearing. The Board shall schedule this hearing for a date not less than seven (7) days nor more than twenty-one days from the date of receipt of the request.

The Gyllstroms responded to the motion and filed an amended complaint in which they alleged that their emails substantially complied with the dispute resolution provision and that the Board's actions constituted an anticipatory breach or waiver of the provision. Based on the record before it, the trial court granted Blue Stone's motion to dismiss, concluding that the Declaration's dispute resolution provision required the Gyllstroms to request and attend a hearing with the Board, that their requests for information did not satisfy the provision, and that the provision could not be ignored. This appeal followed.

1. The Gyllstroms contend that the trial court erred in dismissing their complaint for failure to follow the Declaration's dispute resolution provision because

5

the provision does not control. They argue that Blue Stone treated them as having violated a condominium rule and that, as a result, Blue Stone's Bylaws obligated Blue Stone to provide them with notice of the right to request a hearing. We disagree.

"The relationship between a condominium association and its unit owners is a contractual one, and the condominium instruments are analogous to an express contract between the unit owner/members and the condominium association." (Citation and punctuation omitted.) *Ellington v. Gallery Condo. Assn.*, 313 Ga. App. 424, 425 (1) (a) (721 SE2d 631) (2011). "These instruments are strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning." (Citation and punctuation omitted.) *Barsamian v. Glynn County Bd. of Tax Assessors*, 370 Ga. App. 490, 502 (1) (897 SE2d 893) (2024).

Blue Stone's Bylaws provide that

> [i]f any provision of the Declaration or By-Laws or any rule or regulation of the Association is violated, the Board shall send the violator written notice identifying the violation and fine(s) being imposed and advising the violator of the right to request a hearing before the Board to contest the violation or fine(s) or to request reconsideration of the fine(s).[3]

---

[3] The Bylaws were attached to the Gyllstroms' complaint as an exhibit.

6

That provision is not applicable here, however, because the notice sent out by the Board regarding the Gyllstrom's son was not a notice of a violation of the Declaration or the Bylaws by the Gyllstroms or their son. Although the Gyllstroms argue that it assumed facts that were not accurate, the notice did not point to any violation of the condominium instruments. As a result, the Bylaws did not impose an obligation on the Board to advise the Gyllstroms of the right to request a hearing to contest any such violation.

The Declaration, however, did impose an obligation on the Gyllstroms to request and attend a hearing with the Board prior to filing a lawsuit against Blue Stone or the Board. The Gyllstroms sought information and documents from the Board about its authority for sending out the notice to the other residents about their son, but they did not comply with the dispute resolution provision of the Declaration, which clearly states that an owner *must* request and attend a hearing prior to filing a lawsuit. When considering a similar provision in a homeowners' association declaration, this Court concluded that such failure authorized the trial court to conclude that the homeowner's claims against the association were barred. See *Ochoa v. Coldwater Creek Homeowners Assn.*, 361 Ga. App. 267, 270 (1) (863 SE2d 730) (2021) (homeowners

7

barred from suing homeowners' association for failing to comply with plain language of the declaration that required owners to request a hearing with the association's board prior to filing a lawsuit).

2. The Gyllstroms contend that even if the Declaration's dispute resolution provision does control, they substantially complied with it and dismissal of their complaint was therefore not authorized. They argue that the trial court's reliance on *Ochoa* is misplaced because the declaration in that case expressly required strict compliance with the declaration and bylaws and the Declaration here contains no such requirement. See *Ochoa*, 361 Ga. App. at 269 (1) (declaration provided that "each [o]wner and every occupant of a [l]ot shall comply strictly with this Declaration, the Bylaws, the rules and regulations, as they may be lawfully amended or modified from time to time.") (punctuation omitted).

This Court has held that substantial compliance with notice provisions is generally sufficient. See *Del Lago Ventures, Inc. v. QuikTrip Corp.*, 330 Ga. App. 138, 143 (1) (b) (764 SE2d 595) (2014). But the dispute resolution provision here requires more than just notice to the Board of the unit owner's grievance. The provision requires that a unit owner request and attend a hearing as a condition precedent to

filing a lawsuit against Blue Stone or the Board. And in the request and at the hearing, the unit owner must make a good faith effort to resolve the dispute amicably. Pretermitting whether substantial compliance with the Declaration's dispute resolution provision would suffice, the Gyllstroms' emails did not substantially fulfill these requirements and they are therefore precluded from maintaining their action against Blue Stone and the Board, absent waiver or other sufficient legal excuse. See *Houseboat Store, LLC v. Chris-Craft Corp.*, 302 Ga. App. 795, 799 (1) (c) (692 SE2d 61) (2010) (affirming dismissal of suit for failure to comply with mediation provision, which was a condition precedent to right to initiate litigation, absent a sufficient legal excuse for its nonperformance); *Pillar Dev., Inc. v. Fuqua Constr. Co.*, 284 Ga. App. 858, 860 (645 SE2d 64) (2007) ("Where a contract contains provisions requiring written notice of a claim for breach, the failure to give notice as required or to show waiver by the party entitled to notice is an independent bar to the maintenance of a successful cause of action on the contract.") (citation and punctuation omitted). Because the Gyllstroms did not comply or substantially comply with the requirement that they request and attend a hearing prior to filing suit against Blue Stone and the

Board, the trial court's dismissal on this ground was proper, absent waiver or other sufficient legal excuse.

3. The Gyllstroms contend that Blue Stone, by its actions, waived strict compliance with the dispute resolution provision. In their amended complaint, they alleged waiver as an excuse for their failure to request a hearing prior to filing suit.

"Where a contract prescribes a condition precedent to a party's right to set up a cause of action or defense, and the term is reasonable, the opposite party may usually successfully plead a failure to comply with the condition as a reason for the court's refusal to entertain the action or defense." *DuPree v. South Atlantic Conference of Seventh-Day Adventists, Inc.*, 299 Ga. App. 352, 353 (683 SE2d 1) (2009). "But the courts do not favor forfeiture of rights, and we will readily seize upon circumstances arising in the subsequent conduct or transactions of the parties and imply a waiver, in order to prevent a forfeiture because of noncompliance with formal prerequisites." Id. at 353-354; see *McDaniel v. Mallary Bros. Machinery Co.*, 6 Ga. App. 848, 851 (1) (66 SE 146) (1909) (noting that generally, wherever a contract provides for the forfeiture of rights when one party fails "to comply with certain express conditions as to notice, complaint, or things of that nature, courts will readily seize upon any fact or

circumstance growing out of the conduct of the parties, tending to show a waiver of strict compliance, and will seek to avoid the forfeiture and to leave the actual merits of the case open to investigation.").

The Gyllstroms argue that the Board's response to their email inquiries was clearly inconsistent with the intent to hold a hearing and constituted a waiver of the Declaration's requirement that they request a hearing. In response, Blue Stone points to the *Ochoa* case, where this Court addressed a similar situation and concluded that a piece of correspondence from the homeowners' association's counsel that simply explained the homeowners' association's position was not inconsistent with the contractual provision requiring a hearing and that, as a result, the homeowners had failed to meet their burden to show waiver. *Ochoa*, 361 Ga. App. at 270 (1).

We agree with the Gyllstroms that the Board's June 3, 2022 email was inconsistent with an intention to enforce compliance with the hearing requirement. Unlike the situation in *Ochoa*, the Board did not simply explain its position and leave the matter open for further discussion. Instead, the Board stated that its "actions were both lawful and appropriate" and that it considered the "matter closed." The Board's response was clearly inconsistent with the purpose of the hearing requirement – to

11

have both sides explain their positions in an attempt to resolve the dispute amicably, before litigation. Under the circumstances, we conclude that Blue Stone and the Board have waived their right to enforce the hearing requirement. See *Barranco v. Welcome Years, Inc.*, 260 Ga. App. 456, 458 (579 SE2d 866) (2003) (party waived strict compliance with contract provision by its actions); *Hill v. Century 21 Max Stancil Realty, Inc.*, 187 Ga. App. 754, 755 (1) (371 SE2d 217) (1988) ("A waiver of conditions precedent can be implied by the conduct of the parties.") (citation and punctuation omitted); *Turner Outdoor Advertising, Ltd. v. Fidelity East Financial, Inc.*, 185 Ga. App. 815, 817 (366 SE2d 201) (1988) ("[T]he performance of a condition precedent may be waived.").

Because the trial court did not rule on the other grounds advanced by Blue Stone in its motion to dismiss, this Court has no further rulings to review in this appeal. On remand, the trial court is directed to consider whether Blue Stone is entitled to dismissal on the other grounds raised in its motion. See *DuPree*, 299 Ga. App. at 355.

*Judgment reversed and case remanded. Mercier, C. J., and McFadden, P. J., concur.*